# NATIONAL HOLLOW BRAKE BEAM COMPANY, Appellant, v. PAUL BAKEWELL and F. R. CORNWALL.

### Division Two, December 14, 1909.

1. **PLEADING: Statement of Facts.** The petition or other pleading must state the facts upon which the pleader expects to recover. It is not sufficient to plead conclusions of law or the conclusions of the pleader unsupported by allegations of issuable facts.

2. ———: ———: **Attorneys: Misfeasance: Damages: No Cause Stated.** . Plaintiff and another corporation had brought suit against a third in the Federal court for an infringement upon their patent, and defendants were their attorneys, and obtained a joint decree adjudging that said patent had been infringed, and enjoining further infringement, and the cause was referred to a master to ascertain the profits which had accrued to said defendant by such infringement and other damages. But in this case it is not alleged that said defendant had received or made any profits, or that it was a solvent company, or that either of said complainants had sustained any damages, but it does appear that the said decree was obtained at a cost of four years' litigation and an expense of $50,000, but how much of this sum was furnished by plaintiff does not appear, and it is alleged that "by agreement between the complainants therein, the plaintiff had the right to prosecute the suit and to carry the burden and appropriate the benefits, and if plaintiff had been allowed to exercise that right it would have recovered profits and damages to the amount of $42,500," but no facts are stated as to what that agreement was, nor are any facts stated upon which to predicate an opinion that plaintiff would have recovered the $42,500. *Held*, in an action on the case to hold the attorneys for misfeasance in the discharge of their duties, that the petition does not allege that plaintiff had suffered any damages, or state facts from which a court could find that the infringing company had made any profits, or if it had that complainants in that case could have realized the sum by execution or other process.

3. ———: ———: ———: ———: **Settlement: Two Complainants: Non-Joinder.** Where two complainants were jointly interested in the litigation and the judgment was joint, one of them cannot alone maintain a suit against their attorney for settling the question of damages and permitting a decree waiving damages to be entered. The petition of one complainant is demurrable for non-joinder of the other.

4. ———: Action on Case: Misfeasance: Conclusions of Law.
In an action on the case, charging that defendant attorneys
fraudulently obtained a decree of court which deprived plain-
tiff of a substantial right, the petition should contain such a
statement of the facts, namely, the contents of the agreements,
pleadings and decrees, that the court may be able to construe
them and determine whether the conclusions drawn by the
plaintiff are correct or not. An allegation of duty without stat-
ing the facts that raise the duty is insufficient.

5. ———: ———: ———: Damages. In an action on the
case, charging an attorney with misfeasance, it is not sufficient
for the plaintiff to show a mere nominal damage. The petition
must show that he has suffered substantial damages.

6. ATTORNEYS: Duty to Adversary Clients. An attorney, em-
ployed by the lessee or assignee of a patent, to enjoin the in-
fringement upon its patent, who succeeds in obtaining such an
interlocutory decree, is under no obligation to the patentee or
lessor, who has been joined as a mere nominal co-complainant,
to proceed further and recover damages for such infringe-
ments, where the interests of his own client required him to
be satisfied with a permanent injunction without damages.

7. ———: ———: Failure to Withdraw for One: Accounting:
Damages: Pleading. Both complainants being jointly inter-
ested in obtaining the injunction, and there being no clash of
interests between them until the cause was referred to a mas-
ter to ascertain damages and for an account, it was the attor-
neys' technical duty to withdraw their names as counsel for
the patentee or lessor, the nominal complainant, but having
failed to do that, such patentee, in order to recover from them,
must show by its petition, first, that it had a right to pursue
the accounting for itself, not only independently of, but against
the wishes of the lessee; and, second, that, if it had pursued
such an accounting, it would have recovered substantial dam-
ages. And if it appears from the allegations that the lessor
had disposed of all right to recover, in its own name and in
its own right, any profits or damages growing out of infringe-
ment upon the patent during the lease, its petition does not
state a cause of action against the attorneys for waiving all
damages.

8. PATENT: Lessor's Right to Damages for Infringement. A
patentee who holds the mere naked legal title to the patent,
cannot bring a suit in his own name for an infringement there-
of, when all the beneficial use—the right to make, use, and
vend the inventions—has been by him conveyed to a third
party; and hence in a suit brought by his assignee to enjoin
the infringement, in which he is joined as a nominal co-com-

plainant, he is not entitled, after an interlocutory decree enjoining the infringement has been obtained, to proceed, against the wishes of the assignee, to have damages assessed for profits growing out of the infringement, and hence he cannot maintain suit against the assignee's attorney who waived by stipulation all such damages.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

AFFIRMED.

*Randolph Laughlin* for appellant.

(1) The old common-law precept which required the court to construe a pleading most strongly against the pleader has been overthrown by the statute of Missouri, which requires that, in the construction of the pleading, for the purpose of determining its effect, its allegations shall be liberally construed. R. S. 1899, sec. 629; Butts v. Long, 94 Mo. App. 687; Overton v. Overton, 131 Mo. 559; Foster v. Railroad, 115 Mo. 165. (2) Whether it be strictly or liberally construed, the petition under review sufficiently alleges an action on the case to hold an agent responsible in damages for alleged misfeasance. Cooley on Torts (2 Ed.), p. 618; Mechem on Agency, sec. 832. (3) (a) Even had there been a joint employment, and even were that employment evidenced by a contract which would be construed as joint at common law, still that fact would not constitute a defense here, because, by statute in our State, all contracts which by the common law were joint only, must be construed to be joint and several, and suits may be brought and prosecuted against one or more of those who are liable on such contracts. R. S. 1899, secs. 889, 892. (b) By virtue of the averment last quoted, the Equipment Company was a mere nominal party to the litigation, and had no real right or interest in any damages or profits to be recovered therein. Yet, where this is the case, even in dealing with a

joint contract, all the obligees need not sue, and under the code, which requires the suit to be brought in the name of the real party in interest, the plaintiff's right to maintain this action would be upheld without regard to the equipment company. Cross v. Williams, 72 Mo. 580; Burke v. White, 61 Mo. App. 521; R. S. 1899, sec. 540. (c) Even under the common-law rule, requiring all the obligees of a joint contract to join in an action to enforce it, still it is well settled that where the obligation to pay is several, a several action may be maintained by either party, although the service called for by the contract is a joint service. And the averments of the petition in this case bring it squarely within this rule. Ritchey v. Branson, 33 Mo. App. 418; Bowman v. Branson, 111 Mo. 343; Culver v. Smith, 82 Mo. App. 295. (d) Nor is this conclusion affected by the fact that the subject-matter of the tort in suit was a decree—a record contract. See Smith v. Steele, 81 Mo. 455. (e) Even if the decree were a merger, and even if it thereby rendered joint an interest which was several before the merger, yet the defendant attorney, who would be liable for betrayal of his client's interest if that betrayal had occurred before the decree, cannot take advantage of a technicality which he has himself produced, and undertake to defend a betrayal of the same substantial interest on the ground that it has become merged in a joint decree, which he has himself procured. See Mechem on Agency, sec. 832, p. 699; Cox v. Livingstone, 37 Am. Dec. 486; Gilbert v. Williams, 8 Mass. 51. (f) Co-complainants in a suit on a patent, in which one is interested as patentee and the other as licensee, may sever their legal interests whenever their actual interests diverge, and where one is satisfied with the decree rendered in the cause, and the other is not, the one who is satisfied may stand on the decree, and the one who is dissatisfied may appeal from it. Excelsior Wooden Pipe Co. v. Seattle, 117 Fed. 140. The petition shows that this severance had occurred in

this case; that the equipment company had elected not to pursue the decree, and that the plaintiff company had elected to go ahead with it.    (g)  The question of whether the employment was joint or several is wholly immaterial, for the reason that this suit is not predicated on the contract of employment, nor does it seek to recover damages for the breach of that contract. (h)  The second count of the petition shows that the Equipment Company was equally guilty with Bakewell, and that the two conspired together to cheat and defraud the Beam Company in the interest of Bakewell and the Equipment Company.    On this count, therefore, Bakewell is clearly liable as a joint tortfeasor, and may be sued without joining the equipment company.    McManus v. Lee, 43 Mo. 206; Cooper v. Johnson, 81 Mo. 489; Ray v. McDonald, 104 Mo. 311; Reed v. Peck, 163 Mo. 333; Holiday v. Jackson, 21 Mo. App. 667; Leeser v. Boekhoff, 33 Mo. App. 234; Hamcraft v. Grigsby, 88 Mo. App. 61.  The fourth point of the demurrer is that there can be no recovery because there was no damage; that the equipment company was the exclusive licensee of the patent in suit, and, therefore, and as a matter of law, the beam company had, and could have, no interest, claim or title whatsoever in or to the patent, or in or to any damages occasioned by or any profits arising from its infringement.    To this we reply:  1.   Where the petition, as in this case, affirmatively alleges damage, as well as injury, that allegation cannot be overthrown by demurrer, but must be met by proof.  2.  The defendant is estopped to make this defense.  It does not lie in the mouth of an attorney, who is intrusted with his client's secrets, and who brings them into court in the form of a suit, and procures an interlocutory decree thereon, to then sell out to the other side, and, with the bribe money in his pocket, to say to his client: "You are not damaged, because you had no case.  You would have

lost even had you been permitted to go to trial." 3. Where an attorney wrongfully betrays and sacrifices his client's right, thereby denying that client his day in court, the client is entitled to nominal damages in any event; and where, as is charged in this case, the attorney's conduct was malicious, treacherous, and wanton, the client is entitled to his punitive damages as well as his nominal damages, regardless of whether he is entitled to actual damages or not. See Parker v. Shackelford, 61 Mo. 72. 4. The defendant is estopped by the interlocutory decree, pleaded in the petition, to say that the plaintiff in this case could not have recovered in that. 5. Under the averments of the second count of the petition the transfer of the patent from the Beam Company to the Equipment Company was a mere license, giving the licensee no title in the patent, and no right to sue at all in its own name for an infringement. The title, together with concurrent and reserved rights, remained vested in the Beam Company as the owner of the patent, and suit could be brought and maintained only in its name. Waterman v. McKenzie, 138 U. S. 252; Oliver, etc., Co. v. Chemical Works, 109 U. S. 82; Rude v. Westcott, 130 U. S. 152.

*Lehmann & Lehmann* and *Everett W. Pattison* for respondents.

(1) The first count abounds in epithets and in conclusions of law. But it states no facts, except that the Equipment Company was a co-complainant with the plaintiff in the infringement suit, with equal rights and powers in the conduct of the litigation, with equal right to control it, and with equal right to the benefits of the decree, whatever those benefits might be. This first count does not show any antagonism between plaintiff and its co-complainant. It shows that plaintiff's co-complainant bore at least its share of the burdens and expenses of that litigation. If this plaintiff has been injured by any act of Mr. Bakewell, the

Equipment Company has also been injured by those acts. And if plaintiff has a cause of action, that cause of action belongs equally to the Equipment Company. Plaintiff cannot maintain the action as sole plaintiff. That ground of demurrer was properly sustained. (2) Counsel for plaintiff was evidently aware that he had no standing in court on the first count, and, for that reason, drew an additional count, which, while attempting to set forth a substantive cause of action for misconduct of its agent, abounds, like the first count, in averments which are mere legal conclusions, and wholly fails to state sufficient facts to show on what his client relies for a recovery. The demurrer to this second count was also properly sustained. 1. While Sec. 629, R. S. 1899, requires the court to construe the petition liberally, it also requires that it be construed "with a view to substantial justice between the parties," and, therefore, does not dispense with the necessity of stating the facts on which the pleader depends, as distinguished from mere conclusions. Overton v. Overton, 131 Mo. 559; Sharp v. Railroad, 218 Mo. 517; 21 Enc. Pl. and Prac., p. 907; Hewison v. New Haven, 34 Conn. 136. 2. The demurrer admits only such facts as are stated in the petition; it does not admit any allegations which state the mere conclusions of the pleader. Blaine v. Knapp, 140 Mo. 241; Knapp v. St. Louis, 153 Mo. 560; Same v. Same, 156 Mo. 343; Hand v. St. Louis, 158 Mo. 204; Hagan v. St. Louis, 176 Mo. 149; Mallinckrodt Chem. Works v. Nemnich, 169 Mo. 388; Merchants Exchange v. Knott, 212 Mo. 616; Donovan v. Boeck, 217 Mo. 70; Excelsior Wooden Pipe Co. v. Allen, 104 Fed. 553. 3. The petition shows upon its face that plaintiff's grievance is that defendant Bakewell, while attorney for this plaintiff and its lessee, the Equipment Company, declined to so act as to destroy the value of the property and business which this plaintiff had leased to its lessee; in other words, de-

224 Sup—14

clined to aid one of his clients in violating the terms of its lease to his other client. Jackson v. Eddy, 12 Mo. 209; O'Neill v. Manget, 44 Mo. App. 279; Raband v. Frank, 7 Mo. App. 64; Hamilton v. Wright, 28 Mo. 199; Geer v. Zinc Co., 126 Mo. App. 173; Bagley v. Ross, 110 Mo. App. 344; Sherman v. Williams, 113 Mass. 481; Dexter v. Manley, 4 Cush. (Mass.) 14; Hubble v. Cole, 88 Vt. 236; Madox v. Humphries, 24 Tex. 195; Wade v. Halligan, 16 Ill. 507; Field v. Herrick, 10 Ill. App. 591; Berrington v. Casey, 78 Ill. 317; Saratoga Hotel Co. v. Mossler, 76 Ill. App. 688; Keating v. Springer, 146 Ill. 431; Robinson v. Kilvert, 41 Ch. Div. 88; Bigelow on Estoppel (5 Ed.), p. 332; Taylor Land and Ten. (9 Ed.), sec. 274; 1 Wood Land and Ten. (2 Ed.), p. 773; Brush Elec. Co. v. Light Co., 52 Fed. 945. The wrong sought to be consummated by the plaintiff is emphasized by the fact that it held the legal title to the patent in trust for the Equipment Company, its exclusive licensee. Littlefield v. Perry, 21 Wall. 205. 4. Not only this, but in ruining the leased property and business, defendant Bakewell would not have benefited this plaintiff. For the Chicago Railway Equipment Company, being the exclusive licensee of the patent during the entire life of the same, was the only meritorious client of the defendant, the only one who had any pecuniary interest in the result of the litigation. Clearly, therefore, it was Mr. Bakewell's duty to protect that client as against one who was a mere nominal party, even if it were true that the interests of the two parties conflicted. (a) In order to recover, plaintiff's petition must allege facts which, if proved, will show that it has suffered some substantial injury. It is not enough to show that it is entitled to nominal damages. Thurmond v. Ash Grove Assn., 125 Mo. App. 57; Thompson v. Newell, 118 Mo. App. 405; 1 Sutherland, Damages, pp. 3 and 6; 3 Ed., pp. 4 and 10; 1 Cooley on Torts (3 Ed.), p. 82, * 66; also p. 88, * 71; Ming v. Woolfolk,

116 U. S. 599; Pillsbury-Washburn Co. v. Eagle, 86 Fed. 608; North Vernon v. Voegler, 103 Ind. 314; Paul v. Slason, 22 Vt. 231; Hutchins v. Hutchins, 7 Hill (N. Y.) 104; Passaic Print Works v. Dry Goods Co., 105 Fed. 163, and note, 62 L. R. A. 675; Millard v. Jenkins, 9 Wend. 298; Franklin v. Smith, 21 Wend. 624. For application of the rule to attorneys, see Gilbert v. Williams, 5 Mass. 51. (b) This plaintiff was merely a nominal complainant in the infringement suit, had no substantial interest in the suit, had no right to control it, had suffered no injury from the infringement and all damages and all profits which might be recovered were the sole property of the meritorious complainant, the Equipment Company. A. The right conferred upon a patentee by the issue of letters patent is purely a statutory right, has no existence outside the acts of Congress, and its only effect is to confer on the patentee a monopoly in his invention. U. S. Rev. Stats., sec. 4884; Gayler v. Wilder, 10 How. 477; Jewett v. Suspender Co., 100 Fed. 647. B. The rights which the letters patent confer on the patentee for seventeen years are the exclusive rights to (a) make, (b) use and (c) sell, the invention; i. e. the right to exclude all other persons from (a) making, (b) using and (c) selling, the invention, or articles made in accordance with the invention. U. S. Rev. Stats., sec. 4884; Waterman v. Mackenzie, 138 U. S. 252. C. The patentee has the power to transfer to another any one or more of these three exclusive rights. If he transfers to another all three of them, this is a transfer of the entire monopoly, and nothing is left in the patentee except the naked legal title to the letters-patent themselves. U. S. Rev. Stats., sec. 4898; Waterman v. Mackenzie, 138 U. S. 252; Poe v. Stockton, 39 Mo. App. 550; California Elec. Works v. Finck, 47 Fed. 583; Bicknell v. Todd, 5 McLean (U. S.) 236. D. An exclusive license does transfer to the exclusive licensee all three of these rights, and, therefore, necessarily

transfers to such exclusive licensee the entire monopoly which the patentee secured from the government. It must, then, be equivalent to an assignment of the entire monopoly, whatever may be the name by which it is called. Waterman v. Mackenzie, 138 U. S. 252; Walker on Patents (4 Ed.), p. 339; Robinson on Patents, secs. 763-64; Moore v. Marsh, 7 Wall. 515; Sechler Carriage Co. v. Deere, 113 Fed. 285; Johnson Signal Co. v. Union S. & S. Co., 59 Fed. 20; affirmed, on the point in question, 61 Fed. 940, 943; Rapp v. Kelling, 41 Fed. 792; Washburn v. Gould, 3 Story, 122. E. So completely does such an exclusive license transfer the entire monopoly, leaving in the patentee but the paper on which the patent is written, that the exclusive license excludes the patentee himself, and the exclusive licensee may sue the patentee if he makes, uses or sells the patented article. Gayler v. Wilder, 10 How. 477; Littlefield v. Perry, 21 Wall. 205; Waterman v. Mackenzie, 138 U. S. 252; Excelsior Wooden Pipe Co. v. Allen, 104 Fed. 553; Same v. Pacific Bridge Co., 185 U. S. 282; California Elec. Works v. Finck, 47 Fed. 584; Brush Electric Co. v. Light Co., 52 Fed. 945; Wooster v. Crane, 147 Fed. 515. F. It follows from the above principles that all damages suffered by reason of the infringement by the Interchangeable Company, and all profits which accrued to that company by reason of such infringement, belonged to the Equipment Company, as the exclusive licensee, and that the National Company, plaintiff here, suffered no damage, and was not entitled to any portion of damages or profits which might have been adjudged against the Interchangeable Company had the accounting proceeded. La Republique Francaise v. Saratoga Co., 191 U. S. 427; La Republique v. Schultz, 102 Fed. 153; Wooster v. Crane, 147 Fed. 515; Brush Elec. Co. v. Light Co., 52 Fed. 945; Nelson v. McMann, 16 Blatchf. 139; Gordon v. Anthony, 16 Blatchf. 234. G. It is immaterial whether or not the Equipment Company could have maintained the infringement suit

alone, without making its lessor a nominal co-complainant; for it had the right to use its lessor's name without asking its consent, and even against its will; and the suit was for its sole benefit. Walker on Patents (4 Ed.), p. 339; Robinson on Patents, secs. 763-4; Nelson v. McMann, 16 Blatchf. 139; Moore v. March, 7 Wall. 515; Littlefield v. Perry, 21 Wall. 205; Rapp v. Kelling, 41 Fed. 792; Brush-Swan El. Co. v. Elec. Co., 48 Fed. 224; Huber v. Myers Sanitary Depot, 34 Fed. 752; Dorsey Rev. Harv. Co. v. Bradley Mfg. Co., 12 Blatchf. 202; Excelsior Wooden Pipe Co. v. Seattle, 117 Fed. 140; Rice v. Boss, 41 Fed. 792; Herbert v. Adams, 4 Mason 15; Bricknell v. Todd, 5 McLean 236. In any event the patentee can recover only nominal damages. Birdsell v. Shalliol, 112 U. S. 485; Washburn v. Gould, 3 Story 122. And he cannot sue alone. Hammond v. Hunt, 11 Fed. Cas. 6003, pp. 391, 393; Gayler v. Wilder, 10 How. 477. Any action to which he is a party is for the benefit of the licensee. Nelson v. McMann, 16 Blatchf. 139. 5. The petition shows upon its face that there is a defect of parties, since the Equipment Company is a necessary party plaintiff. Clark v. Cable, 21 Mo. 223; Little v. Harrington, 71 Mo. 390; Dewey v. Carey, 60 Mo. 224; Ryan v. Riddle, 78 Mo. 521; Churchill v. Lammers, 60 Mo. App. 244; Muldrow v. Railroad, 62 Mo. App. 431; Welles v. Gaty, 9 Mo. 565; Thieman v. Goodnight, 17 Mo. App. 429; Slaughter v. Davenport, 151 Mo. 26; Culver v. Smith, 82 Mo. App. 390; White v. Dyer, 81 Mo. App. 643; Waterman v. Mackenzie, 138 U. S. 252; Farnum v. Ewell, 59 Vt. 327; Hill v. Tucker, 1 Taunt. 7; 16 Enc. Pl. and Prac., p. 68.

GANTT, P. J.—This is an appeal from a judgment of the circuit court of the city of St. Louis, sustaining a demurrer to a petition filed by the plaintiff in said circuit court on December 19, 1904. The petition is in two counts. The suit in substance is an

action on the case against the defendants as attorneys to hold them in damage for alleged misfeasance in the discharge of their duties.

The judgment sustaining the demurrer was entered January 25, 1907. Under our code the petition is to be liberally construed in arriving at its meaning, but this court has uniformly held that the petition or other pleading must state the facts on which the pleader expects to recover. It will not suffice to plead conclusions of law or the conclusions of the pleader unsupported by the allegation of issuable facts. Applying this test then let us see what case the first count states. It appears that there were two corporations, the plaintiff, and the Chicago Railroad Equipment Company, which had jointly brought a suit in the Federal court in St. Louis against the Interchangeable Brake Beam Company and obtained a joint decree on May 23, 1901, adjudging that a certain patent had been infringed by the defendant, the said Interchangeable Company, and that said company should be enjoined from further infringement, and the said complainants should recover of the defendant the profits which said Interchangeable Company had received or made or had accrued to it by said infringement, and that the said complainants recover the damages which they or either of them had sustained by reason of said infringement. And that said cause be referred to a master to take a report and account of the profits which said Interchangeable Company had made, and that on such accounting complainants should have the right to cause an examination of the officers of said Interchangeable Company. Now it is to be observed that it is not alleged that the said Interchangeable Company had received or made any profits or that any profits had accrued to it or that it was a solvent company so that a judgment for said profits could be collected. Nor is there any allegation that the said complainants or either of them had sustained any damages by reason

of said infringement, nor are sufficient facts alleged from which a court can see that the plaintiff suffered any damages. Nor does it appear what benefit, if any, it would have been for the said complainants to examine the officers of the said Interchangeable Company. It is alleged that the plaintiff herein was represented in said litigation by the defendant Paul Bakewell, but it is not averred that Bakewell did not also represent the other complainant, the Chicago Railway Equipment Company. It does very plainly appear that the decree was obtained at a cost to the two complainants of more than four years time and an expense of $50,000. How much of this sum, if any, was furnished by the plaintiff does not appear. It is then alleged: "By agreement between the complainants therein, the plaintiff had the right to prosecute the suit and to carry the burden and appropriate the benefits, and if plaintiff had been allowed to exercise that right it would have recovered profits and damages to the amount of $42,500." But no facts are stated as to what that agreement was and we have only the legal conclusion of the pleader that such was the effect of said agreement, nor is there any fact stated upon which to predicate the opinion that plaintiff would have recovered the $42,500.

It is clear that the petition does not allege that the plaintiff had suffered this amount of damages, or any amount of damage, nor any facts from which a court could find that the Interchangeable Company had made any profits or if it had that the complainants in that case could have realized the sum by execution or other process.

The remainder of this count consists in substance of a charge that the defendant Bakewell wrongfully betrayed his trust and entered into a stipulation with the solicitors of the Interchangeable Company wherein he falsely recited that complainant had received satisfaction in the matter of said accounting, and obtained

a report from the master recommending a final decree in pursuance of said stipulation and did obtain a final decree acknowledging full satisfaction on account of said Interchangeable Company's infringement, and the said satisfaction was made in the interest and pursuant to the wishes of those who were then hostile to the plaintiff company.

1. As to this count, it is apparent that the Chicago Railway Equipment Company was a co-complainant and equally entitled on the record to the decree of the Federal court and had an equal right to control and receive the benefits of any further step in that litigation. As to this count there is not the slightest antagonism between the two complainant corporations. The Equipment Company had borne its full share of the costs and if defendants by their stipulation and conduct of the case had injured plaintiff, the other plaintiff, the Equipment Company, on the face of the record had suffered a like injury and the judgment having been joint and the injury joint, the cause of action was necessarily joint and plaintiff was not authorized to maintain a separate action and the circuit court properly sustained the demurrer on the third ground assigned, to-wit, the non-joinder of the Chicago Equipment Company.

2. The second count amplifies and specifies the grounds of complaint, and if plaintiff has any cause of action at all it must be found in this count. It alleges that for several years prior to 1892 the plaintiff, a Chicago corporation, had been engaged in manufacturing brake beams for railway cars. It owned a plant and a number of patents, among others one known as the Hein patent, bearing date April 12, 1887, so that it would expire in April, 1904. It alleges that on December 8, 1892, by written lease of that date, it leased its plant, property and equipment. including said Hein patent, to said Chicago Railway Equipment Company for a term of fifteen years thence next ensuing:

that it was provided by the terms of said lease that the lessor (plaintiff) had demised and leased to the lessee (said Equipment Company) the *exclusive right to make, manufacture, use and vend all inventions under all patents and patent-rights* then owned by the lessor, provided that nothing therein should be construed as an assignment of said letters-patent, and that the interest thereby given to said Equipment Company in and to each of said letters-patent and patent-rights during the term of said lease should be only the exclusive right to make, manufacture, use and vend all inventions under said patent and patent-rights as aforesaid until said letters-patent and patent-rights should become the absolute property of the Equipment Company, as provided in the lease, if there should be no forfeiture of the lease according to the terms thereof, or, if there should be such forfeiture, then only until such forfeiture should occur. It was further provided by said lease that it should be subject to forfeiture for non-payment of rent and upon such forfeiture the right to manufacture and sell brake beams under the Hein patent should revert to the plaintiff, but if there were no forfeitures the lessee should be entitled at the expiration of the lease to an assignment of all the patents, letters-patent and patent-rights. "That for the infringement for said Hein patent, or any other patent, either the lessor or lessee might bring suit at its own expense, and might join the other party where interested as a party complainant, first having indemnified to its satisfaction the party so joined against all loss or losses by reason of such suits, and that in all such cases the parties prosecuting the suit or suits should carry the burden and appropriate the benefits, but in all cases in which the parties mutually agreed and joined in such suits under said letters-patent the costs and charges as well as the recovery should be equally borne and divided." It is then alleged that the Equipment Company took

possession of the plant about the first of January, 1893, and continued, as the licensee of the plaintiff company under said Hein patent, to manufacture and sell brake beams until November, 1904, when the lease was forfeited for non-payment of rent. It is next alleged that during a period of the year 1897 said Hein patent was infringed by various railway equipment companies, who were competing with said Equipment Company and by various railroads. "This infringement was such as to greatly damage the Chicago Railway Equipment Company and its business so as to make it greatly to the advantage of that company to enjoin the further infringement of said Hein patent." "And under the terms of the lease, plaintiff had the right to concur and join in said infringement suits." Thereupon the plaintiff and said Equipment Company both employed the defendant Bakewell to institute a prosecution in the United States Circuit Court, a suit in equity, against the Interchangeable Brake Beam Company, for the purpose of establishing the validity of the Hein patent and to enjoin its infringement, and to recover the profits made by said company through such infringement, and the damages for said infringement. It is then alleged that the defendant Bakewell accepted said employment and brought said suit and prosecuted the same to a successful termination and obtained an interlocutory decree on May 23, 1901, for which services he was paid by the Equipment Company alone. By the terms of the said decree the validity of the Hein patent was established, as was also the plaintiff's ownership thereof, and the Interchangeable Company was enjoined from further infringement, and a reference was made to a master to take an account of the profits which said Interchangeable Company had received from the use of said patent, or infringement thereof, and also to report the damages which the complainants therein had sustained thereby.

It is then alleged that the defendant Bakewell, in the preparation of said decree, was guilty of a wrong to the plaintiff herein in that he caused to be recited that the Chicago Equipment Company by virtue of an exclusive license from the plaintiff was the exclusive licensee of the said plaintiff under said patent, and concealed from the court and failed to incorporate in the decree the conditions above recited imposed by said lease; that up to this time plaintiff and the said Equipment Company were entirely harmonious and united and the defendant Bakewell had represented the interests of both, but about this time their interests clashed and they became involved in litigation with each other; that it was the interest of plaintiff to proceed with the prosecution of the infringement litigation, but it was to the interest of the Equipment Company to abandon that litigation, after having secured its injunction, in order that it might retain or secure the patronage of the infringing railroads, and this also the defendant Bakewell knew.

It is then charged, in short, that the defendant Bakewell took the side of the Equipment Company and procured a final decree and whereby the complainants in that bill waived all profits and damages and acknowledged satisfaction of the same. The damages alleged are $32,500 for profits made by the Interchageable Brake and Beam Company by infringement of the Hein patent, and $10,000 for damages, being the amount it would have been able to prove and recover from said Interchangeable Brake Beam Company, and $5,000 for being deprived of the right to inspect the books of said Interchangeable Company.

Examining these various charges of dereliction on the part of the defendant in the order of their assignment in the petition, the first is that the defendants were guilty of a wrong to plaintiff in causing the decree to recite that the Chicago Railway Equipment Company was the exclusive licensee of plaintiff under

said patent. The petition itself alleges that in the lease by plaintiff to said Equipment Company, plaintiff had "demised and leased to the lessee (said Equipment Company) the exclusive right to make, manufacture, use and vend all inventions under all patents and patent-rights then owned by the lessor (the plaintiff herein)," etc. How it could be a wrong to the plaintiff for the decree to recite a fact which the plaintiff now alleges was true is past our comprehension.

Second, it is next charged that defendant Bakewell "concealed from the court and failed to incorporate or have incorporated in said decree the fact that the so-called exclusive license had coupled with it the conditions imposed by the lease as stated in the petition, or that plaintiff had the right of participating in or appropriating the whole of the benefits or recoveries of or accruing from said litigation as provided in said lease as above set forth." If the petition elsewhere discloses that the plaintiff had the right to appropriate the whole of the benefits or recoveries for the infringement of the said Hein patent and was deprived of that right by the fraudulent and unprofessional conduct of the defendants, this was a serious and substantial charge. The plaintiff's counsel has not seen fit to set forth the lease itself, so that this court can construe the relative rights of the respective parties thereunder, and in the examination of this point we are remitted to the statements of the contents of the lease set out in the petition, and we find the following allegations: "That for infringement for said Hein patent or any other patent either the lessor or the lessee might bring suit at its own expense and might join the other party, where interested, as a party complainant, first having indemnified to its satisfaction the party so joined against all loss or losses by reason of such suits, and that in all such costs the parties prosecuting the suit or suits should carry the burden and appropriate the benefits, but in all such cases in

which the parties mutually agreed and joined in such suits under said letters-patent the cost and charges as well as the recovery should be equally borne and divided.''

It is nowhere alleged in the petition under which branch or clause of the above agreement the plaintiff herein claims that the said infringement suit was brought. It does appear that the Equipment Company paid all the expenses of that suit and that the plaintiff paid none. It is not alleged that the suit in the Federal court to enjoin the infringement was brought by a ''mutual agreement'' in which the cost and charges as well as the recovery should be equally borne and divided. Obviously the plaintiff does not claim to have brought the suit under this stipulation of the lease, for it alleges that it had the right ''to carry the burden and appropriate the whole benefits of the litigation.'' It seems equally certain that the plaintiff does not insist that the suit was brought under the first clause of the lease, whereby either lessor or lessee might bring the suit at its own expense and might join the other party where interested as a party complainant, first having indemnified the party so joined, as it is not pretended that either party indemnified the other for the bringing of the suit, but since the Equipment Company did in fact bring the suit for the reason as alleged, that during and prior to the year 1897 the said Hein patent was being infringed greatly to the damage of the said Equipment Company and its business and the said Equipment Company carried the burden of the cost of that litigation, it would seem that it was entitled to appropriate all the benefits.

There is an averment in the petition that the infringement was such as to give the plaintiff under the terms of the lease the right to concur and join in suits with the Equipment Company, and share with it equally in the recoveries and benefits to accrue therefrom, but the petition does not state the facts from which it

could be determined that the plaintiff had such a right, so far as it appears upon the face of the petition as this infringement occurred when the Equipment Company was the exclusive licensee of the patent and when it alone was being injured by the infringement.

As the petition of the plaintiff is to be measured by the demurrer it is well to repeat that while the demurrer admits all the allegations which are well pleaded, the legal conclusions which the plaintiff would derive therefrom are denied. [Baker v. Berry, 37 Mo. 306; Blaine v. Knapp & Co., 140 Mo. l. c. 247-8.] And while under the Code we are required to give a liberal construction to the petition so as to secure substantial justice between the parties, our Code on this point has ever been construed to require a statement of the facts on which the pleader depends for a recovery. [Overton v. Overton, 131 Mo. 559; Sharp v. Railroad, 213 Mo. 525.] As this is an action on the case there should be such a statement of the facts, to wit, the contents of the agreement, pleadings and decrees, that the court may be able to construe them and determine whether the conclusions drawn by the plaintiff are correct or not. [21 Ency. of Pl. and Prac., p. 907.] In Hewison v. New Haven, 34 Conn. 136, the court very aptly said: "The law is well settled that an allegation of duty without stating the facts which raise the duty is insufficient. It is equally true that if the facts stated do not raise the duty alleged, the allegation of duty is immaterial." And it may be well to remark now that in this character of a case it is not sufficient for the plaintiff to show a mere nominal damage. The petition must show that the plaintiff has suffered substantial damage. [Thurmond v. Ash Grove Assn., 125 Mo. App. 57; Thompson v. Newell, 118 Mo. App. 416; 1 Cooley on Torts (3 Ed.), p. 82; North Vernon v. Voegler, 103 Ind. 319.]

3. Coming now to the substance of the petition, we have a case made of a lessor who had leased its

factory to a lessee and granted to its lessee the exclusive right to make, manufacture, use and vend all inventions under all patents and patent-rights then owned by the lessor. That lease was to run for fifteen years, to-wit, from the 8th of December, 1892. Among other patents which were granted to the lessee was one known as the Hein patent, which was issued by the Government on April 12, 1887, and consequently would expire April, 1904. The case then made is, that in 1897, it was discovered by the lessee, Chicago Railway Equipment Company, that another manufacturing company, to-wit, the Interchangeable Company, of St. Louis, was infringing this Hein patent to the alleged great damage of the lessee, the Equipment Company, and thereupon a bill in equity was brought by the defendants herein as counsel for the lessee, the Equipment Company, against the Interchangeable Company, to restrain the infringement, and in bringing said suit the plaintiff herein as owner of the legal title was joined as a complainant. It is conceded that the defendant herein so conducted that suit in equity as to obtain a decree on May 23, 1901, by which the validity of the said Hein patent was established and an injunction obtained against the Interchangeable Company for the infringement thereof and also an order of reference to ascertain the profits received by said Interchangeable Company and an account of the damages sustained. Up to this time, according to the averments, there was perfect harmony between the two complainants, but it is alleged that about the time of the rendition of that decree their interests clashed and litigation ensued between them. "It remained to the interest of this plaintiff, the National Hollow Brake Beam Company, to proceed with the prosecution of said litigation (to-wit, that brought by the lessee against the Interchangeable Company) to the end that it might recover and participate in or appropriate the fruits of the litigation. It became to the interest of the

Chicago Railway Equipment Company (the lessee), on the other hand, to abandon the litigation after having secured its injunction, in order thereby to secure the patronage of the infringing railroads, which would have been alienated by a further investigation of the Interchangeable Brake Beam Company's affairs.'' And it is alleged that the defendants knew these facts. The gravamen of the complaint is that these defendants, as solicitors for the lessee, entered into a compromise of that case, whereby the injunction against the Inter changeable Company was made perpetual, but all damages and profits were released, and that this was done without the knowledge of the plaintiff, the National Hollow Brake Beam Company. This suit is to recover the damages which plaintiff alleges it might have recovered if the suit had been prosecuted in its interest and against the interest of the lessee, the Equipment Company. As tending to assist us in defining the duty of defendants as solicitors in the situation in which the above state of affairs placed them, it is proper to ascertain the relative rights of the two complainants in the bill for the injunction in the Federal court. The lessee of the Hein patent, the Chicago Railway Equipment Company, had taken a fifteen-year lease in January, 1893, with the grant from the plaintiff of an ''exclusive right *to make, manufacture, use and vend all inventions* under all patents and patent-rights *then owned by plaintiff,*'' including the Hein patent. In 1897 it discovered this patent was being infringed by the Interchangeable Brake Beam Company to the great damage of the Chicago Railway Equipment Company and its business. Having the exclusive right to make, use and vend the patent brake beam under the Hein patent, the said Equipment Company was for all practical purposes the assignee of said patent and at all events was the exclusive licensee of said patent and entitled to enjoin an infringement of said patent

and was entitled to all the profits received by the infringing company and to all damages that had accrued. This results from the nature of the patent-right, which is purely statutory. By section 4884, Revised Statutes, United States, 1878, a patent is "a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to *make, use, and vend* the invention or discovery throughout the United States and the territories thereof." It is a monopoly created by law. It is the right to exclude all others from making, using and selling the invention or articles made in accordance with the invention. Said the Supreme Court of the United States in Waterman v. Mackenzie, 138 U. S. 1. c. 255-6: "The patentee or his assigns may, by instrument in writing, assign, grant and convey, either, first, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, second, an undivided part or share of that exclusive right; or, third, the exclusive right under the patent within and throughout a specified part of the United States. [Rev. Stats., sec. 4898.] A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with assignor; in the first and third cases, in the name of the assignee alone." In Littlefield v. Perry, 88 U. S. 1. c. 222, the Supreme Court of the United States said: "But even if they are *not technically assignees,* we think this action is nevertheless maintainable. They certainly had the exclusive right to the use of the patent for certain purposes within their territory. They thus held a right under the patent. The claim is that this right has been infringed." This last excerpt defines the relation of the

Chicago Railway Equipment Company to the suit in equity in the Federal court to enjoin the infringement of the Hein patent. The fact is that so far as the petition in this case discloses, the plaintiff herein was joined purely as a matter of form. The Equipment Company was the real party in interest and was the meritorious plaintiff. What then was the duty of these defendants, the solicitors who brought that suit and recovered that decree? It is conceded and alleged that up to the time they obtained that decree there was no divided duty. They had directly served the Equipment Company who had retained them, and who alone had compensated them for their successful services. And indirectly, had obtained for plaintiff, without compensation, a decree establishing the validity of the Hein patent. This court has ever recognized and enforced the rule that it is the duty of an attorney to devote his skill and diligence to the interest of his client and has refused to permit him to act for the adverse party in the same suit, even though his motives were honest. But this rule has never prevented an attorney from acting for two parties when their interests were not hostile or conflicting. When the clash came between the plaintiff and the Equipment Company, the defendants were confronted with the question as to what course their professional obligations required them to pursue. The complainant in the decree, who had paid them for their services and who had the beneficial cause of action in that case, was the Equipment Company, and the plaintiff herein was a mere formal party so far at least as the allegations of the petition in this case disclose. As already said the interest of the Equipment Company required it to take its final decree of injunction against the further infringement of its patent rights under its lease, and to abandon any further claim for an accounting or damages in order not to alienate the various railroad companies which used its brake beams.

Certainly it can be affirmed without contradiction that the defendants were not only bound not to pursue a course detrimental and ruinous to their client who was the meritorious party in said proceeding, but they were bound to conserve its interest as far as possible within their power. As opposed to this the plaintiff was demanding of the defendants, and the Equipment Company, its lessee, that the reference should go forward and an accounting be taken of the damages and profits, at the loss to its co-complainant of the business and profits thereof for which it was organized. In a word the plaintiff was demanding of these defendants that they should pursue a course which would tend to break down and destroy the business which had been turned over by the lessor, the plaintiff herein, to the Equipment Company, their client. That the plaintiff had no right to demand such a course of conduct on the part of the defendants, we think is perfectly plain both in morals and in law. The plaintiff having granted this Hein patent to the Equipment Company and leased its plant for the manufacture and sale thereof, it was bound not to do any act which would render that lease and patent-right less beneficial to the Equipment Company. It is a familiar principle in the law of landlord and tenant that a lessor must be held to have intended that the lease should be beneficial to the lessee and in so far as he is concerned that he will do no act to interrupt the free and peaceable enjoyment of the thing granted it. [Hamilton v. Wright, 28 Mo. 1. c. 206; Jackson v. Eddy, 12 Mo. 209; O'Neill v. Manget, 44 Mo. App. 281; Dexter v. Manley, 4 Cush. (Mass.) 14.]

There is no doubt that for misfeasance or unreasonable neglect of an attorney whereby his client suffers a loss an action may be supported and damages recovered to the amount of that loss. As already said whatever of substantial right the plaintiff had in the infringement suit was protected by the defendants.

The legal title to the patent was established through the services of Mr. Bakewell and the Interchangeable Company was finally enjoined from infringing that patent and not until the question of the accounting arose, was there any complaint made of the defendants' professional course. Two views may be taken of what the conduct of the defendants should have been when this clash or conflict arose between the plaintiff herein and the Chicago Equipment Company. Bound as the defendants were to subserve and conserve the right of the Equipment Company, the client whose wrongs had furnished the basis of that action and the client who had paid the defendants all their fees for the prosecution of that suit, it is clear they were obligated not to do anything which would injure their client, and it may be that in the strict ethics of the profession they should have withdrawn their names as counsel for the plaintiff, even though plaintiff was a mere nominal party to the action, and thus have avoided even the semblance of not serving the client for whom they appeared on the record. But they did not do this and this brings us to the further consideration of plaintiff's position in this case. In order to recover against the defendants, its petition must show, first, that it had a right to pursue the accounting for itself, not only independently of, but against the wishes of the Equipment Company, and second, that if it had pursued such an accounting, it would have recovered substantial damages or profits or both. From the authorities already cited, we think it is clear from the allegations of the petition itself that the plaintiff had disposed of all of its rights to recover any profits or damages, in its own name or in its own right, growing out of the infringement which occurred during the lease to the Equipment Company. We can discover nothing in the terms of the lease as pleaded which reserved any right to the plaintiff to any profits and damages growing out of an infringement during the term of that lease. Granting that the

mere legal title still remained in the plaintiff under the peculiar reservations in the lease, it is still clear that the petition pleads a grant of all the rights which constitute a patent a monopoly under the Federal statute. The mere holding of the letters-patent themselves in the suit, which was one in equity, was a matter of no consequence whatever. As was said by the Supreme Court of the United States in Gayler v. Wilder, 10 How. (U. S.) 477, "The thing to be assigned is not the mere parchment on which the grant is written. It is the monopoly which the grant confers: the right of property which it creates." This being the case, we think it is clear that the plaintiff had no standing in court which would have enabled it to have pursued the accounting and damages for itself independent of the Equipment Company, and as we have already said in order to enable it to recover in this action as against these attorneys, it must show that it would have recovered substantial damages or profits and not mere nominal damages. The Equipment Company could have dismissed the suit so far as it was itself concerned, and if it had done so, under the allegations in the petition herein, the plaintiff could not have continued its prosecution, and so, as the defendants were the attorneys of the Equipment Company, the only meritorious party to the action, the defendants had a perfect right to stipulate that they would not further prosecute the suit for profits or damages but would take their final decree for the injunction. In Goodyear v. Bishop, 4 Blatchf. 438, the action was brought for the infringement of letters-patent in the name of the owner of the legal title but for the benefit of an exclusive licensee. The motion was made by the defendants founded on the consent of the nominal plaintiff to have the suit dismissed. NELSON, J., said: "This motion is resisted on the ground that the suit is brought in the plaintiff's name for the benefit of his licensees, the Rubber Company. This company is the owner of an exclusive right

to the patent of Goodyear for making wearing apparel out of vulcanized India-rubber. Whether the interest of the licensees is technically an assignment at common law, or by the Patent Act is not important in the application of the principle. It is sufficient if they possess such a right under the patentee as entitled them to the protection sought, and of that there can be no doubt. I agree that the nominal plaintiff can claim indemnity against costs, which on proper application, would be provided by the court. It is said that Goodyear, or those representing him, has stipulated to sue infringers, and that the remedy of the licensee is on this covenant. But if so, the stipulation does not necessarily take from the party his remedy of proceeding directly against the wrongdoer. The motion is denied." In Hammond v. Hunt, 11 Fed. Cas., page 391, the question as to who are proper parties plaintiff in a bill for the infringement of a patent, was before the court, and the court said: "Can an exclusive licensee maintain a bill in equity for infringement without joining the patentee? And can the patentee maintain one without joining the licensee? I answer both of these questions in the negative. By an exclusive license I mean one which does not amount to an assignment, by reason of something reserved to the patentee as in Gayler v. Wilder, 10 How. 477, where the patentee excepted out of his grant the right to make the machines within a certain part of the territory granted; or in several cases like this at the bar, in which the patent has been divided by subjects, and the grant is to make certain articles exclusively." This and many similar cases establish the rule that a patentee who holds merely the naked legal title to the patent cannot bring a suit in his own name for an infringement thereof, when all the beneficial interest, the right to make, use and vend the inventions has been conveyed by him to a third party, and hence it must necessarily follow that the plaintiff in this case could not have proceeded

with the reference and become entitled to a judgment for the profits and damages that had accrued to its lessee, and therefore it had no right to demand that these defendants as solicitors for the Equipment Company should proceed to prosecute that action against the rights and interests of the real meritorious complainant in the decree in the Federal court.

After a most careful consideration of the petition and the law of the case, and admonished as we are of the necessity of maintaining a high degree of loyalty on the part of attorneys to their clients, we have attempted to weigh every fact in this case with the view to justice between the parties, and the utmost that we have been able to find in the conduct of the defendants that renders them liable to criticism is their failure to withdraw their names as counsel for the plaintiff, in a formal way, after the clash and trouble had arisen between the Equipment Company and the plaintiff. But we are clearly of the opinion that the failure to do so could not, under the facts alleged in the petition, have been more than a technical wrong to the plaintiff, as in our opinion under all the facts alleged the only substantial damages that could have been recovered had the reference proceeded must have inevitably been awarded to the Equipment Company, and not to the plaintiff, and as the plaintiff cannot recover for a bare nominal damage in this character of a case, we think the circuit court properly sustained the demurrer and its judgment is affirmed.

*Burgess* and *Fox., JJ.,* concur.