Kenneth NAPPIER and Pamela
Nappier, Plaintiffs-Appellants,

v.

Emmett KINCADE, Madge Kincade and
White Castle System, Inc.,
Defendants-Respondents.

No. 45926.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 31, 1984.

Motion For Rehearing and/or Transfer to
Supreme Court Denied March 8, 1984.

Application to Transfer Denied
April 16, 1984.

Joyce Y. MacDonald, Law Offices of J. Martin Hadican, St. Louis, for plaintiffs-appellants.

Ray E. White, III, Kortenhoff & Ely, St. Louis, for defendants-respondents.

KELLY, Judge.

Kenneth Nappier and Pamela Nappier, (hereinafter "appellants"), bring this appeal from an order of the Circuit Court of the City of St. Louis dismissing their petition for failure to state a claim upon which relief might be granted. For reason hereinafter stated we reverse and remand with directions.

Appellants instituted this cause of action under the Missouri Wrongful Death Statute, § 537.080, RSMo 1978. Counts I and V of the petition are the only counts involved in this appeal and relate only to appellants' claim against White Castle System, Inc., (hereinafter "respondent").[1]

The facts alleged are that on August 23, 1981, Darren B. Nappier, the son of appellants, entered respondent's restaurant on 6513 South Lindbergh, St. Louis County, Missouri, and purchased food; that while he was waiting to be served, one Emmett Kincade, using a loud voice, threatened to cause physical harm to him; that after Darren had been served and walked to the parking lot of the restaurant to consume his food, Emmett Kincade struck and kicked Darren about his body and head, and that on August 23, 1981, Darren died as a direct and proximate result of injuries inflicted by Emmett Kincade.

It was further alleged in both Counts I and V that the negligence of respondent was:

c. Defendant White Castle System, Inc., negligently and carelessly failed to restrain and control defendant Emmett Kincade and/or to remove him from its premises when it knew or, in the exercise of due care, should have known that defendant Emmett Kincade had acted in an irrational, hostile and threatening manner toward Darren B. Nappier.

d. Defendant White Castle System, Inc., negligently and carelessly failed to provide adequate security to protect its customer, Darren B. Nappier, when it knew or, in the exercise of due care should have known, that the said restaurant is frequented in the early morning hours by persons who are intoxicated

---

1. The trial court in its order of dismissal designated it as an "appealable order." Rule 81.06.

and who act in an irrational, hostile and threatening manner toward other customers of said restaurant; and

e. Defendant White Castle System, Inc., negligently and carelessly failed to provide adequate security to protect its customers, when it knew or, in the exercise of due care, should have known, that, prior to the striking and kicking of Darren B. Nappier, altercations had occurred between other customers of the said restaurant.

Count V of appellants' petition contained these same allegations of negligence on the part of respondent in sub-paragraph a, b, and c of paragraph 2 of said count.

■■■ It is well settled in Missouri that a petition is not to be dismissed for failure to state a claim upon which relief can be granted unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In reviewing the sufficiency of a petition on a motion to dismiss, we give the averments a liberal construction and accord the petition those reasonable inferences fairly deducible from the facts stated. *Irby v. St. Louis County Cab Co.*, 560 S.W.2d 392[1, 2] (Mo.App.1977).

■■ A petition seeking damages for actionable negligence must allege ultimate facts, which, if proven, show (1) existence of a duty on the part of the defendant to protect plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure. *Meadows v. Friedman R.R. Salvage Warehouse*, 655 S.W.2d 718, 720[1] (Mo.App.1983). If the allegations in plaintiffs' petition, taken as true, do not satisfy the elements of actionable negligence, the trial court should dismiss the petition for failure to state a claim. *Irby*, supra, at p. 394[4].

■■ Traditionally the law of torts has held that a private person has no duty to protect another from deliberate criminal attack by a third person. *Ford v. Monroe*, 559 S.W.2d 759, 762[2] (Mo.App.1977). Generally this has been extended to include business owners and their invitees. Policy reasons for not imposing such a duty in-clude: judicial reluctance to tamper with a traditional common law concept; the notion that the deliberate criminal act of a third person is an intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; the vagueness of the standard the owner must meet; the economic consequences of the imposition of such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector. *Cornpropst v. Sloan*, 528 S.W.2d 188, 195 (Tenn.1975).

However, there are exceptions to this rule of law.

Generally the business owner owes a duty to exercise reasonable and ordinary care to make his premises safe for his customers, *Howard v. Lundry*, 591 S.W.2d 193, 197[2] (Mo.App.1979), and is subject to liability for bodily harm caused to his customers on the premises if he allows said customers to remain on the premises without reasonable care to make the harmful condition reasonably safe, or if he fails to give an adequate warning of the condition where the condition is one he has no reason to believe the customer could discover. *Harbourn v. Katz Drug Co.*, 318 S.W.2d 226, 228–29 (Mo.1958); *Turcol v. Shoney's Enterprises, Inc.*, 640 S.W.2d 503, 505[1] (Mo.App.1982); Restatement (Second) of Torts § 343 (1965).

■■ Consistent with this duty of the business owner to exercise reasonable care to maintain safe premises, an affirmative duty to exercise reasonable care to protect a business customer from criminal attack has been recognized under special circumstances. The special circumstances exist where the business owner realizes, or should realize, through special facts within his knowledge, that criminal acts of a third party are occurring or are about to occur on his premises. In these circumstances the business owner is charged with a duty to take precautions to protect his customers from such criminal actions. *Gregorc v. Londoff Cocktail Lounge, Inc.*, 314 S.W.2d 704, 707[5] (Mo.1958); Restatement (Second) of Torts, § 301, Comment B (1965).

This court, in *Meadows v. Friedman R.R. Salvage Warehouse*, l.c. 718, recognized that although there exists no general duty to protect a plaintiff against the intentional criminal conduct of unknown third persons, such a duty can arise when "special relationships" or "special circumstances" exist such that an act or omission exposes someone to an unreasonable risk of harm through the conduct of another.

This is not a case of special relationship. That concept exists when one entrusts himself to the protection of another and relies upon that person to provide a place of safety. "Such relationships are usually delineated as those of innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee." *Meadows*, supra, p. 721[4].

However, it may be one of "special circumstances." "Special facts include those in which a known dangerous or violent individual is present * * *, or where an individual present has conducted himself so as to indicate danger and sufficient time exists to prevent injury, * * *." *Meadows*, supra, p. 721.

This action involves the operation of a restaurant and a patron of said restaurant business who was fatally injured when he was allegedly assaulted by a fellow patron on the restaurant parking lot. This court in *Durbin v. Cassalo*, 321 S.W.2d 23, 25[2] (Mo.App.1959) held that when a tavern owner permits a person to remain in his tavern knowing him to be one of vicious tendencies likely to inflict injury upon others, the tavern owner is generally under a duty to protect his patrons from the acts of such vicious person, citing *Gregorc v. Londoff Cocktail Lounge*, supra.

The California Court of Appeals in *Winn v. Holmes*, 143 Cal.App.2d 501, 299 P.2d 994, 996[5] (Cal.App. 2 Dist.1956) held that the property owner's duty to his invitees extends beyond protection against injuries due to the conditions of the premises, and that he must use reasonable care to protect them against injury through the negligent or wrongful acts of other invitees on the premises where he has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. The property owner must exercise the power of control or expulsion, which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at the hands of this third person. He must act as a reasonable man to avoid harm from the negligence of such person. He is required to take action only when he has reason to believe, from what he has observed or from past experience, that the conduct of this third person will be dangerous to the patron. In the ordinary case a warning will be sufficient, unless it is apparent that, because of lack of time or the character of the conduct to be expected, it will not be effective to give protection. Prosser, *Handbook of the Law of Torts*, § 61 at p. 395, 4th ed. (1971).

The California court said, l.c. 996, "We are of the view that the law imposes a duty upon the owner of a restaurant to use reasonable care to protect his invitees against assaults by third persons also upon the premises." The proprietor's duty arises from his control over the premises and his power to restrain or expel offenders against the peace and safety of the premises.

There is a split of authority on whether the frequency of violent crimes on the premises or in very close proximity thereto constitutes "special circumstances" and impose a duty on the property owner or occupier to take measures to guard against such criminal activity. For authority that they do, see: *Atamian v. Supermarkets General Corp.*, 146 N.J.Super. 149, 369 A.2d 38 (1976); *Butler v. Acme Markets*, 177 N.J.Super. 279, 426 A.2d 521 (1981); *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 281 S.E.2d 36 (1981). For cases holding they do not, see: *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975); *Cook v. Safeway Stores, Inc.*, 354 A.2d 507, (D.D.C.1974).

In *Murphy v. Penn Fruit Company*, 274 Pa.Super. 427, 418 A.2d 480 (1980), a case cited favorably in *Virginia D. v. Madesco Inv. Co.*, 648 S.W.2d 881 (Mo. banc 1983), a

patron of defendant's grocery store who had just completed her weekly grocery shopping was a victim of a purse snatching on the grocery store's parking lot. During the course of the purse snatching, she was stabbed twice in the chest. The crime occurred at approximately 7:30 p.m. and under the cover of darkness her assailants fled into the night. In affirming the trial court's denial of Penn Fruit's motion for a new trial, the court followed § 344 of the Restatement (Second) of Torts and held, that while an occupant of land for business purposes is not the insuror of the safety of his patrons, reasonable measures must be taken to control the conduct of third persons, or to give adequate warning to enable patrons to avoid possible harm. Liability attaches only where the occupant is negligent, i.e. fails either to take reasonable care to discover that dangerous conduct of third persons is occurring or is likely to occur, or to take reasonable care to provide appropriate precautions. It is not necessary that the business owner be aware of the exact type of criminal act or acts which might take place on its premises. It is sufficient if the business owner has notice, actual or constructive, of prior acts committed by third persons on or about their premises which might cause injuries to its patrons.

However, to bring itself within this rule of law, a plaintiff must allege that specific crimes occurred on the premises; when the identity is known, that specific individuals committed violent acts on the premises; that the individual attacker had been on the premises previously and had acted violently, or that the restaurant operator was aware or could have been aware of his presence and potential danger in sufficient time to avert the attack or summon police assistance. *Friedman,* supra, l.c. 721.

There is no allegation that Emmett Kincade had, on previous occasions, acted in an "irrational, hostile and threatening manner" towards the deceased nor anyone else; that he was on this occasion intoxicated nor that defendant White Castle System, Inc. or any of its agents, servants or employees knew that when intoxicated he was of a bellicose nature. There was no allegation that any agent, servant or employee of defendant White Castle System, Inc., knew, or should have known, of his threats against the decedent in time to expel him from the premises, nor that any agent, servant or employee of the defendant White Castle Systems, Inc. was present on the parking lot who observed or knew of the altercation in time to prevent the assault which took place there.

Nevertheless, we are of the opinion that while the trial court did not err in its order sustaining defendant White Castle System, Inc.'s motion to dismiss, appellants should have been afforded an opportunity to file an amended petition to plead a cause of action against respondent. For this reason we reverse the judgment of the trial court and remand with directions to authorize appellants to file an amended petition to allege, if it can, a cause of action against respondent within 15 days.

Judgment reversed and remanded with directions.

PUDLOWSKI, P.J., and SMITH, J., concur.